UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DEBRA BROWN,                                         Case No.:

                        Plaintiff,                   COMPLAINT

            -against-

XGEN PHARMACEUTICALS DJB, INC.,                      PLAINTIFF DEMANDS A
                                                     TRIAL BY JURY
                        Defendant.
-------------------------------------------------------X

 Plaintiff, DEBRA BROWN, by Plaintiff's attorneys, PHILLIPS & ASSOCIATES,

ATTORNEYS AT LAW, PLLC, hereby complains of the Defendant, upon information and belief,

as follows:

## Nature of the Case

1. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42

 U.S.C. § 12101, *et seq*., and the New York State Human Rights Law ("NYSHRL"), New

 York State Executive Law § 296, *et seq*.  Plaintiff seeks damages to redress the injuries

 Plaintiff has suffered as a result of being discriminated against on the basis of Plaintiff's

 actual or perceived disabilities (bipolar disorder, panic attacks and depression), failing to

 receive a reasonable accommodation, and retaliated against for requesting a reasonable

 accommodation, resulting in her unlawful termination.

## Jurisdiction and Venue

2. Jurisdiction of this Court is proper under 42 U.S.C. § 12133 and 28 U.S.C. §§ 1331 and

 1343.

3. This Court has supplemental jurisdiction over Plaintiff's claims brought under state law

 pursuant to 28 U.S.C. § 1367.

4.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the Defendant resides in the Eastern District of New York.

### Procedural Prerequisites

5.  Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6.  Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC, dated October 31, 2022, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto as **Exhibit A**.

7.  This Action is being commenced within ninety (90) days of receipt of said Notice.

### Parties

8.  Plaintiff is a resident of the County of Chemung, State of New York.

9.  At all times material, Defendant XGEN PHARMACEUTICALS DJB, INC., ("XGEN") was and is a domestic business corporation duly existing pursuant to and by virtue of the laws of the State of New York, with its principal place of business located at 4 York Court, Northport, New York 11768.

10.  At all times material, Defendant XGEN had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

11.  At all times material, Defendant XGEN was Plaintiff's employer under the ADA.

12.  At all times material, Defendant XGEN was Plaintiff's employer under the NYSHRL.

13.  At all times material, all parties mentioned herein worked and/or continue to be employed with Defendant.

**Material Facts**

*Plaintiff's Disability*

14. In or around June 2001, Plaintiff was diagnosed with bipolar disorder, panic attacks and depression.

15. As a result of her bipolar disorder, panic attack and depression diagnoses, Plaintiff experiences, *inter alia*, extreme anxiety, physical tremors, extreme depression, withdrawal from social interactions, claustrophobia, uncontrollable emotions, racing thoughts and feelings of worthlessness.

16. Plaintiff's bipolar disorder, panic attacks and depression are impairments that substantially limits one or more of Plaintiff's major life activities within the meaning of 42 U.S.C. § 12102(1)(A).

17. Plaintiff's bipolar disorder, panic attacks and depression are physical, mental or medical impairments preventing the exercise of a normal bodily function within the meaning of NYSHRL § 292(21).

18. As such, Plaintiff has and/or had a disability under the ADA.

19. As such, Plaintiff has and/or had a disability under the NYSHRL.

20. Plaintiff was able to perform the necessary functions of her position working for Defendant with a reasonable accommodation.

*Plaintiff's Employment with Defendant*

21. In or around October 2014, Plaintiff began her employment with Defendant as a full-time temporary employee with the title of "Accounting Associate II" earning approximately $16.00 per hour or approximately $33,280 per year, excluding benefits.

22. Plaintiff was qualified for her position and performed her duties well.

3

23. On or about February 17, 2015, Plaintiff earned an award of "Employee of the Month."

24. On or about April 20, 2015, Plaintiff was hired as a permanent full-time employee with Defendant earning approximately $16.00 per hour or approximately $33,280 per year, excluding benefits.

25. On or about November 3, 2015, Plaintiff received an employee recognition bonus.

26. On or about December 31, 2015, Plaintiff received a year-end bonus.

27. On or about September 26, 2016, Plaintiff received a performance pay increase of $16.64 per hour or approximately $34,611.20 per year.

28. On or about October 11, 2017, due to Plaintiff's outstanding work ethic, Plaintiff received a performance bonus.

29. On or about September 25, 2018, Plaintiff received a performance pay increase of $17.14 per hour or approximately $35,651.20 per year.

30. On or about October 24, 2018, due to Plaintiff's outstanding work ethic, Plaintiff received a performance bonus.

31. On or about July 1, 2019, Plaintiff received a performance pay increase of $17.48 per hour or approximately $36,358.40 per year.

32. In or around May 2020, Plaintiff felt extremely overwhelmed, was experiencing extreme fatigue, inability to sleep, and was having difficulty concentrating. Plaintiff notified Defendant of her symptoms, specifically relating to her disabilities. Plaintiff subsequently provided a doctor's note outlining Plaintiff's disability and took one week of Short-Term Disability due to the symptoms she was experiencing based on her disability.

33. On or about June 29, 2020, Plaintiff received a performance pay increase of $17.83 per hour or approximately $37,086.40 per year.

4

34. On or about October 9, 2020, Plaintiff received a letter from Cathy Liles ("Liles"), a co-owner of Defendant XGEN stating "you are so important to the team."

35. On or about October 27, 2020, Plaintiff received a card from Liles stating, "you are working hard and it is appreciated."

36. On or about January 5, 2021, Plaintiff's father unfortunately passed away. As a result, Plaintiff took a brief bereavement leave which was approved by Defendant.

37. On or about February 24, 2021, due to Plaintiff's outstanding work ethic, Plaintiff received a performance bonus.

38. On or about March 1, 2021, Plaintiff requested a meeting with Defendant's Human Resources Department due to backlash that she was receiving from Defendant's Manager of accounting and Plaintiff's direct manager, Cathy Bachman ("Bachman"). Plaintiff met with Kendra Malorzo ("Malorzo"), Defendant's Senior Human Resource Manager, and explained that she felt that she was being micromanaged and scrutinized ever since she took a brief bereavement leave. Plaintiff inquired if she had any write-ups, disciplinary actions or negative comments in her employee file, to which Malorzo confirmed that Plaintiff did not. Malorzo also informed Plaintiff that the bereavement leave was not being held against her.

39. Plaintiff was relieved to hear that she never received any disciplinary actions against her during her employment with Defendant XGEN.

40. On or about April 5, 2021, Plaintiff was experiencing extreme panic attacks and had suicidal ideations due to her disabilities. Plaintiff informed Defendant's Human Resources Department that she was getting admitted to the hospital due to her disability and that her doctor wanted her to take a leave of absence immediately.

41.   Plaintiff subsequently provided Defendant with a doctor's note indicating that she was going to be on a medical leave of absence from April 5, 2021 through April 29, 2021.

42.   On or about April 5, 2021, Plaintiff went on Short Term Disability Leave.

43.   Plaintiff was hospitalized from April 5, 2021 through April 7, 2021.

44.   On or about April 29, 2021, Plaintiff send Defendant's Human Resources Department a doctors' note indicating that her leave of absence needs to be briefly extended. Approximately 30 minutes after providing Defendant with her doctor's note, Plaintiff received a phone call from Malorzo and Bachman, who informed Plaintiff that she was terminated.

45.   Malorzo and Bachman explained that Plaintiff was being terminated due to alleged performance issues that spanned back to six years prior. Plaintiff was shocked as she had never been reprimanded or admonished due to her work ethic.

46.   It was quite the opposite considering that Plaintiff consistently received pay raises and bonuses due to her excellent work ethic and performance. Plaintiff also confirmed with Malorzo that she did not previously have any disciplinary actions in her employment file.

47.   Plaintiff was informed by Malorzo and Bachman that her insurance was to be cancelled the following day.

48.   Plaintiff was in the midst of a mental health crisis and Defendant terminated Plaintiff because she required a brief period of time off due to her disability.

49.   Defendant fabricated and falsely accused Plaintiff of having performance-related issues.

50.   Plaintiff was unlawfully terminated due to her need for a reasonable accommodation and in retaliation for requesting a continued accommodation.

51.  The above are just some of the acts of discrimination that Plaintiff experienced while employed by Defendant.

52.  At no time did Defendant ever engage in, or attempt to engage in, an interactive process regarding Plaintiff's disabilities or need for a reasonable accommodation.

53.  Plaintiff never received any discipline or warnings prior to her termination.

54.  Due to the close temporal proximity of providing the reasonable accommodation request to Defendant and her termination, it is clear that Plaintiff was terminated for requesting a reasonable accommodation due to her disability.

55.  Defendant was on notice of Plaintiff's disabilities, whether actual and/or perceived.

56.  Plaintiff engaged in protected activity by informing Defendant of her disabilities, as well as requesting a reasonable accommodation.

57.  Plaintiff advised Defendant about her disabilities, whether actual and/or perceived, and made a request for a reasonable accommodation.

58.  Defendant unlawfully discriminated against, humiliated, degraded and belittled Plaintiff. As a result, Plaintiff suffers loss of rights, loss of income and emotional distress.

59.  Defendant's actions and conduct were intentional and intended to harm Plaintiff.

60.  Defendant knew or should have known of the discriminatory conduct and failed to take corrective measures within its control.

61.  Plaintiff was repulsed, offended, humiliated, belittled and disgusted by this blatantly unlawful conduct and termination.

62.  Defendant acted intentionally and intended to harm Plaintiff.

63.  Defendant acted maliciously, willfully, and outrageously, and will full knowledge of the law.

64. Plaintiff has also suffered loss of income, loss of employment, loss of benefits, future emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

65. As such, Plaintiff demands punitive damages against Defendant.

**First Cause of Action for Discrimination**
**Under the Americans with Disabilities Act**

66. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

67. The Americans with Disabilities Act, 42 U.S.C. § 12112(a) provides, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."

68. Defendant XGEN violated the section hereto as set forth.

69. Plaintiff is entitled to the maximum amount allowed under this statute.

**Second Cause of Action for Discriminatory Discharge**
**Under the Americans with Disabilities Act**

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

71. The Americans with Disabilities Act, 42 U.S.C. § 12112(a) provides, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."

72. Defendant XGEN violated the section hereto as set forth.

73. Plaintiff is entitled to the maximum amount allowed under this statute.

8

### Third Cause of Action for Failure to Provide a Reasonable Accommodation
### <u>Under the Americans with Disabilities Act</u>

74.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

75.   The Americans with Disabilities Act, 42 U.S.C. § 12112(a) provides, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."

76.   The Americans with Disabilities Act, 42 U.S.C. § 12112(b) entitled "Construction," states, in pertinent part,

> As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes—
>
> . . . .
>
> (5)
>
> (A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or
>
> (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

77.   Defendant XGEN violated the section hereto as set forth.

78.   Plaintiff is entitled to the maximum amount allowed under this statute.

**Fourth Cause of Action for Retaliatory Interference**
**Under the Americans with Disabilities Act**

79.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

80.   The Americans with Disabilities Act, 42 U.S.C. § 12203, provides:

> (a) Retaliation
>
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> (b) Interference, coercion, or intimidation
>
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

81.   Defendant XGEN violated the section hereto as set forth.

82.   Plaintiff is entitled to the maximum amount allowed under this statute.

**Fifth Cause of Action for Discrimination**
**Under the New York State Executive Law**

83.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84.   New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

10

85. Defendant XGEN violated the section hereto as set forth.

86. Plaintiff is entitled to the maximum amount allowed under this statute.

### Sixth Cause of Action for Discriminatory Discharge
### Under the New York State Executive Law

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

88. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer
> or licensing agency, because of an individual's age, race, creed,
> color, national origin, sexual orientation, military status, sex,
> **disability**, predisposing genetic characteristics, familial status,
> marital status, or domestic violence victim status, to refuse to hire
> or employ or to bar or to discharge from employment such
> individual or to discriminate against such individual in
> compensation or in terms, conditions or privileges of employment.

89. Defendant XGEN violated the section hereto as set forth.

90. Plaintiff is entitled to the maximum amount allowed under this statute.

### Seventh Cause of Action for Failure to Provide a Reasonable Accommodation
### Under the New York State Executive Law

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

92. New York State Executive Law § 296(3)(a) provides that:

> It shall be an unlawful discriminatory practice for an employer,
> licensing agency, employment agency or labor organization to
> refuse to provide reasonable accommodations to the known
> disabilities, or pregnancy-related conditions, of an employee,
> prospective employee or member in connection with a job or
> occupation sought or held or participation in a training program.

93. Defendant XGEN violated the section hereto as set forth.

94. Plaintiff is entitled to the maximum amount allowed under this statute.

11

### Eighth Cause of Action for Retaliation
### Under the New York State Executive Law

95.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

96.  New York State Executive Law § 296(7) provides that:

> It shall be an unlawful discriminatory practice:
>
> (e)  For any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

97.  Defendant XGEN violated the sections cited herein as set forth.

98.  Plaintiff is entitled to the maximum amount allowed under this statute.

### Jury Demand

99.  Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff respectfully requests a judgment against Defendant:

A.  Declaring that Defendant engaged in unlawful employment practices prohibited by the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and the New York State Human Rights Law, New York State Executive Law § 296, *et seq.*, in that Defendant discriminated against Plaintiff based on Plaintiff's disabilities (bipolar disorder, panic attacks and depression), failed to provide Plaintiff with a reasonable accommodation, and retaliated against Plaintiff for requesting a reasonable accommodation, resulting in her unlawful termination.

B.  Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and conduct and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

12

C.   Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D.   Awarding Plaintiff punitive damages;

E.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant's unlawful employment practices.

Dated:  New York, New York
        December 1, 2022

                                        PHILLIPS & ASSOCIATES,
                                        ATTORNEYS AT LAW, PLLC

                        By:    _____
                                Stefanie Shmil
                                Steven Fingerhut
                                *Attorneys for Plaintiff*
                                45 Broadway, Suite 430
                                New York, New York 10006
                                (212) 248-7431
                                sshmil@tpglaws.com
                                sfingerhut@tpglaws.com

# EXHIBIT A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

Olympic Towers
300 Pearl Street, Suite 450
Buffalo, NY 14202
Phone: (716) 431-5007
Fax: buffaxmain@eeoc.gov

**Charging Party**
Debra Brown
187 Catalpa Drive
Horseheads, New York 14845

      Re:     Charge No.: **525-2022-00664**
             Debra Brown v. Xgen Pharmaceuticals Djb, Inc.

Dear Ms. Brown:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have evaluated your charge based upon the information submitted. You allege that Respondent discriminated against you based upon your disability, in violation of the Americans with Disabilities Act.

Respondent's position statement has been previously shared with you. Your rebuttal to this position statement has been received and analyzed. Based upon this analysis the Commission is unable to conclude that the information establishes a violation of Federal law on the part of Respondent. This does not certify that Respondent is in compliance with the statutes. No finding is made as to any other issue that might be construed as having been raised by this charge.

The Commission's processing of this charge has been concluded. You will receive a Notice of Dismissal and Right to Sue in the coming days. Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge within 90 days of receipt of said notice. Otherwise, your right to sue will be lost.

If you have any questions, please Investigator Littlehale at stephanie.littlehale@eeoc.gov.

                    Sincerely,

                    **Maureen C. Kielt**  Digitally signed by Maureen C. Kielt
                                           Date: 2022.10.31 16:01:20 -04'00'

                    Maureen C. Kielt
                    Director, Buffalo Local Office

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Buffalo Local Office
300 Pearl St, Suite 450
Buffalo, NY 14202
(716) 431-5007
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 10/31/2022

**To:** Mrs. Debra L. Brown
187 Catalpa Drive
HORSEHEADS, NY 14845
Charge No: 525-2022-00664

EEOC Representative and email:    Stephanie Littlehale
Investigator
stephanie.littlehale@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

**Maureen C. Kielt** Digitally signed by Maureen C. Kielt
Date: 2022.10.31 16:01:48 -04'00'

Maureen C. Kielt
Director, Buffalo Local Office

**Cc:**
Kendra Malorzo
XGEN PHARMACEUTICALS DJB
300 DANIEL ZENKER DR
Horseheads, NY 14845

Alex R Hirschfield
The Hirschfield Law Group, LLC
PO Box 530512
Mountain Brook, AL 35253


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 525-2022-00664 to the District Director at Timothy Riera, 33 Whitehall St 5th Floor

New York, NY 10004.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

Enclosure with EEOC Notice of Closure and Rights (01/22)

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*